```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

JOYCE L. SNYDER,

                            Plaintiff,        **16-cv-6257**

                                              **DECISION AND ORDER**

            -vs-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

                            Defendant.
___

Plaintiff Joyce L. Snyder ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("The Act"), seeking review of the final decision of the Commissioner of Social Security ("defendant" or "the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## PROCEDURAL HISTORY

On November 30, 2012, plaintiff concurrently filed applications for DIB and SSI, alleging disability as of

___

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

February 15, 2012. Administrative Transcript ("T.") 166-178. Following the denial of those applications, a hearing was held at plaintiff's request on August 6, 2014, before administrative law judge ("ALJ") F. Patrick Flanagan, at which testimony was given by plaintiff and vocational expert ("VE") Linda N. Vause. T. 39-83. The ALJ issued a decision dated December 24, 2014, in which he determined that plaintiff was not disabled as defined in the Act. T. 9-27.

In applying the required five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA") (*see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. 2008) (detailing the five steps)), the ALJ made the following findings, among others: (1) plaintiff met the insured status requirements of the Act through March 31, 2012; (2) plaintiff had not engaged in substantial gainful activity since February 15, 2012; (3) plaintiff's history of mitral valve prolapse, history of possible transient ischemic attack, low back pain, carpal tunnel syndrome, hyperlipidemia, depressive disorder, and anxiety disorder were severe impairments; (4) plaintiff's impairments did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (5) plaintiff had the residual functional capacity ("RFC") to "perform less than the full range of light work as defined in 20 CFR 404.1576(b) and 416.967(b)" with the following limitations: lift and carry up to

2

20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand/walk for six hours in an eight-hour workday; reach, handle, and finger frequently with both hands; understand, remember, and carry out simple and complex instructions; carry out simple and complex tasks if there are no more than occasional changes in routine; maintain a regular schedule and accept instructions from supervisors, but would do best with work not requiring more than occasional interaction with supervisors, coworkers, or the public; and low-stress work, defined as that requiring no negotiation, conflict resolution, or more than occasional decision-making; (6) plaintiff was unable to perform any past relevant work; and (7) considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform.

The ALJ's decision became the final determination of the Commission on February 24, 2016, when the Appeals Council denied plaintiff's request for review.  T. 1-3.  Plaintiff subsequently filed the instant action.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

3

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by "substantial evidence" in the record. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon the correct legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

**A. Relevant medical evidence.**

Plaintiff's sole argument in this action is that the ALJ's determination that she was limited to low-stress work and occasional interaction with supervisors, co-workers, and the general public was based on his own lay opinion and not supported

4

by the record. Plaintiff has raised no issues related to the physical limitations set forth in the RFC. As a result, medical evidence related to those physical limitations is not summarized here.

The record reveals that on January 17, 2013, plaintiff underwent a consultative psychiatric examination with Dr. Kavitha Finnity, Ph.D. T. 367-370. Dr. Finnity noted current medications of diazepam, pantoprazole, aspirin, pravastatin, oxycodone, ibuprofen, velafaxine, and cyclobenzaprine. T. 367. Plaintiff reported frequent waking, loss of appetite, depressive symptoms (including dysphoric mood, crying, loss of energy, and social withdrawal), excessive anxiety, worrying, restlessness, and cognitive deficits of short-term memory loss and difficulty with concentration, word finding, and organization. *Id*. On examination, plaintiff demonstrated appropriate eye contact, normal posture and motor behavior, fluent speech intelligibility, adequate expressive and receptive language, coherent and goal directed thought processes, depressed affect, neutral mood, clear sensorium, intact attention and concentration, intact recent and remote memory skills, average cognitive functioning, and fair insight and judgment. T. 368-69. Dr. Finnity opined that plaintiff could follow and understand directions and perform simple tasks, maintain a schedule, learn new tasks and perform complex tasks with supervision, and make appropriate decisions. T. 369. Dr. Finnity further opined that plaintiff had difficult with attention and

5

concentration, as well as "difficulty relating with others and dealing with stress due to psychiatric symptoms." *Id*. Dr. Finnity assessed plaintiff with: depressive disorder, NOS; anxiety disorder, NOS; heart disease; history of stroke; tendinitis; carpal tunnel syndrome; migraines; chronic pain; and high cholesterol. *Id*.

Also on January 17, 2013, plaintiff underwent a consultative internal medicine examination by Dr. Donna Miller, D.O. T. 371-75. Among other issues and conditions, Plaintiff reported having migraine headaches on average four to five times per month, and stated that her migraines were triggered by stress. T. 372.

On March 12, 2013, non-examining state agency reviewing physician Dr. M. Apacible, M.D., performed both a psychiatric review technique assessment and a medical residual functional capacity assessment of plaintiff's medical record. T. 95-96; 99-101. Dr. Apacible opined that plaintiff had mild limitations with activities of daily living, moderate limitations with maintaining social functioning, and mild limitations with maintaining concentration, persistence, or pace. T. 95-96. Dr. Apacible further opined that plaintiff was moderately limited regarding her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest

6

periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; set realistic goals; and make plans independently of others. T. 99-101. Finally, Dr. Apacible opined that plaintiff was capable of performing simple work. T. 101.

On July 19, 2013, plaintiff underwent a psychiatric evaluation by nurse practitioner ("NP") Kathe Klein at Wayne Behavioral Network. T. 414-15. Plaintiff had been referred to Wayne Behavioral Network as the result of an incident in which she was drinking alcohol with her fiancé and her daughter and became angry and started breaking things, resulting in the police being called. T. 414. Plaintiff reported anger issues, mood swings (which she noted were less intense when she stopped drinking alcohol), fatigue, and difficulty sleeping. *Id*. Plaintiff further reported having been a victim of childhood abuse and domestic violence, and stated that she had been told in 2009 that she had post-traumatic stress disorder ("PTSD") and bipolar disorder. *Id*. An anger management group was recommended for plaintiff, put she declined to attend. *Id*. Plaintiff denied any problems with anxiety or panic. *Id*. Plaintiff's current medications were flexeril, ibuprofen, ASA, omeprazole, and pravastatin. *Id*. Plaintiff reported that she had been drinking alcohol daily until one month prior. T. 415. On mental status examination, plaintiff was cooperative and exhibited

fair eye contact, unremarkable motor activity, normal rate and tone of speech, angry mood with congruent affect, organized thought processes, intact cognition, and impaired insight and judgment. *Id.* NP Klein assessed plaintiff with mood disorder NOS, PTSD by history, and alcohol dependence. *Id.*

On January 29, 2014, plaintiff's treating physician Dr. Rebecca Wadsworth, M.D., and treating physician's assistant ("PA") Michael Wittek jointly completed a medical examination for employability form related to plaintiff. T. 683-84. Dr. Wadsworth and PA Wittek noted the following medical conditions: TIA, single episode with no ongoing problems; GERD, well-controlled on medication; and hyperlipidemia, "good control" with medication. Tr. 683. Dr. Wadsworth and PA Wittek opined that plaintiff was moderately limited as to: understanding and remembering instructions; carrying out instructions; maintaining attention and concentration; and maintaining basic standards of personal hygiene and grooming. Tr. 684.

On February 4, 2014, licensed clinical social worker ("LCSW") Ellen Ersteniuk of Wayne Behavioral Health Network completed a psychiatric report for employment regarding plaintiff. T. 686. LCSW Ersteniuk noted that plaintiff had been under her care starting in December 2013 and assessed plaintiff with depressive disorder, NOS. *Id.* LCSW Ersteniuk opined that plaintiff was not capable of working in any capacity at that time. *Id.*

8

On February 7, 2014, LCSW Ersteniuk completed a mental health assessment for plaintiff. T. 630-638. Plaintiff's current medications were aspirin, protonix, pravastatin, multi-vitamin, flexeril, and ibuprofen. T. 630. Plaintiff reported having "anger outbursts." T. 632. With respect to interpersonal relationships, plaintiff reported having "friends and no problems." T. 636. On mental status examination, plaintiff was cooperative, her affect was appropriate, her mood was anxious, her speech was spontaneous, and her thought form was focused. *Id*. Plaintiff's orientation was intact, her memory and concentration were impaired, and her insight and judgment were limited. *Id*. Plaintiff had a GAF score of 70. T. 637.

**B. Non-medical evidence**.

During the August 6, 2014 hearing, plaintiff testified that she was 41 years old and had been married for approximately one year. T. 44-45. Plaintiff had approximately 32 jobs over the course of 15 years, and testified that she switched jobs frequently because she "had problems and they were part-time." T. 48. Her most significant employment history was as a truck driver. T. 48-51. Plaintiff reported suffering from a lack of memory. T. 55. She further reported having difficulty talking to other people without become upset and angry. T. 60-61. Plaintiff told the ALJ that she did not have a good relationship with her daughter and that the police had told them to "stay away from one another." Tr. 66.

9

## II. The Commissioner's decision is supported by substantial evidence.

In her motion, plaintiff contends that the Commissioner's decision was not supported by substantial evidence. In support of that contention she makes only one argument - namely, that "the ALJ relied on his own lay opinion to interpret Dr. Finnity's vague opinion that Plaintiff has 'difficulty relating with others and dealing with stress.'" (Docket No. 11-1 at 14). This argument is without merit.

It is true that an "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, "the ALJ's RFC finding need not track any one medical opinion." *O'Neil v. Colvin*, 2014 WL 5500662, at *6 (W.D.N.Y. Oct. 30, 2014). "Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013).

In this case, the record as a whole amply supports the ALJ's conclusion that plaintiff was best-suited to low-stress work and occasional interaction with supervisors, co-workers, and the general public. In addition to Dr. Finnity's opinion that Plaintiff has difficult relating with others and dealing with stress, the record also contains: evidence that plaintiff's

10

migraines may be exacerbated by stress; Dr. Apacible's opinion that plaintiff is moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting; Dr. Wadsworth's and PA Wittek's opinion that plaintiff is moderately limited in her abilities to remember and carry out instructions and to maintain attention and concentration; plaintiff's statements to LCSW Ersteniuk that she has friends and no problems with interpersonal relationships; and plaintiff's hearing testimony that she has difficulty speaking to other people without becoming upset and angry.  It was the ALJ's duty to assess this evidence (and the other evidence in the record) as a whole, and to reconcile any inconsistencies.  In light of the evidence of record, the Court finds that the ALJ's conclusion that plaintiff would do best in low-stress occupations with only occasional interpersonal interaction was reasonable and supported by substantial evidence.

Plaintiff's reliance on *Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013) and *Curry v. Apfel*, 209 F.3d 117(2d Cir. 2000) is misplaced. *Selian* and *Curry* do not prohibit an ALJ from relying on a medical opinion simply because it uses terms such as "mild" and "moderate." *See, e.g., Lewis v. Colvin*, 548 Fed. Appx. 675, 667 (2d Cir. 2013) (medical opinion that the plaintiff had "mild

limitations for prolonged sitting, standing, and walking" and should avoid "heavy lifting and carrying" supported determination that the plaintiff could perform light work); *Collier v. Colvin*, 2016 WL 4400313, at *3 (W.D.N.Y. Aug. 17, 2016) (medical opinion imposing "moderate" limitations was not "so vague as to render it useless" where it was supported by an objective physical examination) (internal quotations omitted).  In this case, as in *Collier*, Dr. Finnity's statement was supported by a physical examination of plaintiff, during which she was cooperative, had an adequate manner of relating, and showed fair insight and judgment. T. 368-69.  In addition, plaintiff told Dr. Finnity that she was able to socialize and had a good relationship with her family. T. 369.  The ALJ was entitled to consider the totality of Dr. Finnity's assessment in determining plaintiff's RFC.

Plaintiff has not articulated any other reason for her contention that the Commissioner's decision was not supported by substantial evidence.  Upon its review of the record in its entirety, this Court finds that the record contains substantial evidence to support the ALJ's determination.

## **CONCLUSION**

For the foregoing reasons, the defendant's cross-motion for judgment on the pleadings (Docket No. 12) is granted, and plaintiff's motion for judgment on the pleadings (Docket No. 11) is denied.  The complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA<br>HONORABLE MICHAEL A. TELESCA<br>UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       March 7, 2017